**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

ELVA BERNARD,                                  :
                        Plaintiff,             :          Case No. 19-cv-5184-JMY
                                               :
        v.                                     :
                                               :
JOHNSON & JOHNSON,                             :
                        Defendant.             :

**MEMORANDUM**

**YOUNGE, J.**                                                    **SEPTEMBER 8, 2020**

**I.    INTRODUCTION:**

Defendant filed a motion for summary judgment (ECF No. 50) that is currently before the

Court for disposition.[1]  In its motion for summary judgment, the Defendant argues that Delaware

law and not Pennsylvania law should apply to various theories of liability averred by the

Plaintiff.  The Defendant moves to dismiss: Count I (Negligence – Failure to Warn); Count II

(Strict Liability – Manufacturing Defect); Count III (Strict Liability – Failure to Warn); Count IV

(Strict Liability – Defective Product); Count V (Strict Liability – Design Defect); Count VI

(Common Law Fraud); Count VII (Fraudulent Concealment); Count VIII (Constructive Fraud);

Count IX (Negligent Misrepresentation); Count X (Negligent Infliction of Emotional Distress);

Count XI (Breach of Express Warranty); Count XII (Breach of Implied Warranty); Count XIII

(Violation of Consumer Protection Laws); Count XIV (Gross Negligence); and Count XV

(Unjust Enrichment).

Plaintiff filed a Response in Opposition to the Motion for Summary Judgment (Opp.,

ECF No. 52) in which she concedes that many of the theories averred in the Short Form

Compliant (ECF No. 1) should be dismissed.  However, Plaintiff contested dismissal of Count I

(Negligence – Failure to Warn); Count III (Strict Liability – Failure to Warn); Count V (Strict

Liability – Design Defect); and Count XIV (Gross Negligence).

For the reasons stated below, the Court grants in part and denies in part the Defendant's

Motion for Summary Judgment.  The Court will deny summary judgment on all contested

theories and will allow Plaintiff to proceed on Count I (Negligence – Failure to Warn); Count III

(Strict Liability – Failure to Warn); Count V (Strict Liability – Design Defect); and Count XIV

(Gross Negligence).

**II.    BACKGROUND:**

A.    Facts:

Plaintiff is an 83-year-old woman who has lived in Linwood, Pennsylvania, for over

forty-two years.  (Dep. of Elva Bernard, Opp. Ex. 4, ECF No. 52-4.)  She asserts personal injury

arising out of two surgical procedures to treat pelvic organ prolapse.  These two surgical

procedures were performed at Wilmington Women's Center in Wilmington, Delaware by Dr.

Stanley Wiercinski, M.D., on November 14, 2006 and again on October 2, 2007.  (Statement of

Undisputed Facts ¶ 2, ECF No. 50-1.)  During these surgical procedures, Dr. Wiercinski

implanted a mesh product known as the Prolift System to treat bladder prolapse and tension-free

Vaginal Tape (TVT) to treat urinary incontinence.  (*Id*. ¶ 1.)

Plaintiff continued to experience problems at the surgical site, and on October 23, 2012,

Babak Vakili, M.D., performed revision surgery.  (Statement of Undisputed Facts ¶ 3.)  The

revision surgery performed by Dr. Vakili occurred in Wilmington, Delaware.  (*Id*.)  In the

operative notes from the revision surgery, Dr. Vakili noted, *inter alia*, "[t]he entire anterior mesh

was rolled up and eroded from sidewall to sidewall, and, "[t]he posterior vaginal mesh was rolled

up into the apex, although not eroded." (Operative Report of Dr. Vakili, Opp. Ex. 9, ECF No. 52-9.)

       In this product liability action, Plaintiff alleges personal injury caused by Prolift pelvic mesh implanted to treat her pelvic organ prolapse. (Short Form Complaint.) In the Final Master Compliant filed in United States District Court, Southern District of West Virginia, Plaintiff alleges that the Prolift pelvic mesh was designed, patented, manufactured, tested, labeled, marketed, sold and distributed by Defendant. (First Amended Master Long Form Complaint and Jury Demand ¶ 7, 19, 20 & 25 (August 31, 2012), *In Re Ethicon Inc., Pelvic Repair System Product Liability Litigation*, MDL No. 2327, https://wvsd.uscourts.gov (last visited August 31, 2020).)

B.    <u>Procedural History</u>:

       On February 19, 2003, this action was directly filed into the multi-district litigation by Short Form Complaint that incorporated by reference allegations in the Final Master Complaint filed in the Southern District of West Virginia. (*In Re: Ethicon Inc., Pelvic Repair System Product Liability Litigation,* MDL No. *2327*, ECF No. 1). This action was combined with approximately 39,616 cases that were originally filed or transferred into ongoing Ethicon multi-district litigation in which all cases were consolidated for discovery and pretrial proceedings. (ECF No. 11). Following the completion of discovery and pretrial proceedings in the multi-district litigation, this action was transferred to the Eastern District of Pennsylvania with specific direction that the "receiving court [should] immediately set [this case] for trial without reopening discovery." (Order entered by Joseph R. Goodwin, United States District Court for the Southern District of West Virginia, ECF No. 32.)

Following transfer of this action (ECF No. 37), this Court requested a status report from the parties.  On November 11, 2019, it held a Rule 16 Conference (ECF No. 44) where it entered a Scheduling Order that set a deadline for the filing of motions for summary judgment and set the matter for trial. (ECF No. 45.)  Trial was delayed because of the Covid-19 pandemic.

## III.    LEGAL STANDARD:

Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The court shall render summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Fed. R. Civ. P. 56(c)*.  An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986).  A factual dispute is "material" only if it might affect the outcome of the suit under governing law.  *Id.*  All inferences must be drawn, and all doubts resolved in favor of the non-moving party.  *See United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962); *see also Gans v. Mundy*, 762 F.2d 338, 341 (3d Cir. 1985).

On a motion for summary judgment, the moving party bears the initial burden of identifying those portions of the record that it believes demonstrate the absence of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  To defeat summary judgment, the non-moving party must respond with facts of record that contradict the facts identified by the moving party and may not rest on mere denials.  *Id.* at 321, n.3; *see First Natl. Bank of Pa. v. Lincoln Natl. Life Ins. Co.,* 824 F.2d 277, 282 (3d Cir. 1987).  In a case where the non-moving party is

the plaintiff and therefore bears the burden of proof, the non-moving party must, by affidavits or by the depositions and admissions on file, "make a showing sufficient to establish the existence of [every] element essential to that party's case." *Celotex*, 477 U.S. at 322-24. The non-moving party must adduce more than a mere scintilla of evidence in its favor to defeat the moving party's summary judgment motion. *See Williams v. Borough of West Chester, Pa.,* 891 F.2d 458, 460 (3d Cir. 1989).

## IV.   DISCUSSION:

Plaintiff opposes the Defendant's Motion for Summary Judgment and seeks to proceed to trial on theories of liability as follows: Count I (Negligence – Failure to Warn), Count III (Strict Liability – Failure to Warn), Count V (Strict Liability – Design Defect), and Count XIV (Gross Negligence). For the reasons discussed below, the Court will permit Plaintiff to proceed to trial on these theories.

A.   <u>Plaintiff's Negligence/Strict Liability Failure to Warn Claims and Strict Liability Design Defect Claim are Cognizable Under Pennsylvania Law</u>:

Pennsylvania recognizes a claim for negligence that can be brought against medical device manufacturers based on a theory of failure to warn. (See § D herein below.) However, the Defendant argues that Plaintiff's negligence claims should be analyzed under Delaware law rather than Pennsylvania Law. The Defendant also argues that Delaware law should be applied to bar Plaintiff's strict product liability claims. (See § C.1 herein below.)

Plaintiff argues that Pennsylvania law applies to this matter, and that Pennsylvania law recognizes strict product liability claims. (Sur-Reply Opp., ECF No. 55.) The Pennsylvania Supreme Court has not definitively ruled that a medical device manufacturer like Defendant is subject to strict liability claims. Therefore, it is unclear whether Pennsylvania law recognizes strict liability claims against medical device manufacturers. In the absence of a decision from

the Pennsylvania Supreme Court, the Court must predict how the Pennsylvania Supreme Court would rule on this issue.  *Berrier v. Simplicity Mfg., Inc.*, 563 F.3d 38, 45-46 (3d Cir. 2009).  A federal district court in this position should consider "relevant state precedents, analogous decisions . . . dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue at hand."  *Id.* at 46.

Two recently decided district court decisions are persuasive in determining that Pennsylvania would permit strict liability claims to proceed against a medical device manufacturer.  *Gross v. Coloplast Corp.*, No. 19-4385, 434 F. Supp. 3d 245, 250 (Jan. 17, 2020); *Schrecengost v. Coloplast Corp.*, No. 17-0220, 425 F. Supp. 3d 448 (Dec. 2, 2019).  In *Schrecengost v. Coloplast Corp.*, the district court conducted a well-reasoned survey of Pennsylvania law and wrote, "From the sources available, it appears that the Pennsylvania Supreme Court would permit a cause of action against medical device manufacturers - specifically manufacturers of surgical mesh implants - under design defect and failure to warn theories of strict liability."  (*Id.* at 464.)

Because this Court accepts the reasoning behind *Gross* and *Schrecengost*, it also concludes that Pennsylvania law recognizes strict product liability claims against medical device manufacturers.  This Court must now determine if Pennsylvania law applies by resolving the issue of choice-of-law.

B.     <u>Choice-of-Law</u>:

Pennsylvania choice-of-law principles apply to this case because this action has appropriately been transferred to the Eastern District of Pennsylvania for trial.  A federal court sitting in diversity must apply the choice-of-law rules of the state in which the court sits to determine which state's law applies.  *Taylor v. Mooney Aircraft Corp.*, 265 F. App'x. 87, 90 (3d

Cir. 2008); *Chin v. Chrysler, LLC*, 538 F.3d 272, 278 (3d Cir. 2008) (*citing Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). The fact that this action was directly filed into the MDL in United States District Court in the Southern District of West Virginia does not change this analysis. *Wahl v. Gen. Elec. Co*, 786 F.3d 491, 498 (6th Cur. 2015) (holding that when a direct-filed case is transferred to a court of proper jurisdiction, the law of the transferee court should apply). This result is also consistent with the resolution of conflicts-of-law that arise within cases that are directly filed into multi-district litigation when the issue of conflicting laws must be resolved therein—for example when bellwether cases are selected for trial within multi-district litigation.[2]

A review of the specific facts and procedural history illustrates that the Eastern District of Pennsylvania is the appropriate venue for this matter, and that its choice-of-law analysis should apply. Plaintiff's Short Form Complaint states that she is a resident of Pennsylvania and that venue would be proper in the Eastern District of Pennsylvania had the action not been directly filed into the multi-district litigation. (Short Form Complaint ¶ 5.) This action was transferred to the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1404(a). (Transfer Order, ECF No. 32.) The Order transferring this action to the Eastern District of Pennsylvania specifically states that this action is one of 1,474 that remains pending in the multi-district litigation and that the action is "ready to be transferred to the appropriate jurisdiction." (*Id.*) Nothing in the pleadings suggests that any issue of choice-of-law was previously decided while this action was part of the multi-district litigation.

C.     Pennsylvania Choice-of-Law Analysis:

Pennsylvania employs a "flexible rule" which combines the "significant contacts" analysis of Restatement (Second) of Conflicts of Law § 145 and a "governmental interest

analysis." *See Griffith v. United Air Lines, Inc.*, 416 Pa. 1, 21 (Pa. 1964) ("[W]e are of the opinion that the strict *lex loci delicti* rule should be abandoned in Pennsylvania in favor of a more flexible rule which permits analysis of the policies and interests underlying the particular issue before the court."). "The merit of such a rule is that 'it gives to the place having the most interest in the problem paramount control over the legal issues arising out of a particular factual context' and thereby allows the forum to apply 'the policy of the jurisdiction most intimately concerned with the outcome of [the] particular litigation.'" *Id*. at 22.

Pennsylvania's choice-of-law analysis asks three questions: (1) is there an actual conflict or a false conflict between potentially applicable states' laws, (2) if there is an actual conflict, is there a "true conflict" based on the governmental interests underlying each law, and (3) if there is a "true conflict," which state has more significant contacts and a greater interest in its law being applied. *See Specialty Surface Intern., Inc., v. Continental Cas. Co.*, 609 F.3d 223, 229-36 (3d Cir. 2010); *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 227-36 (3d Cir. 2007). If a true conflict exists, the Court must then determine which state has the "greater interest in the application of its law." *Cipolla v. Shaposka*, 439 Pa. 563, 566-568 (Pa. 1970). In *Melville v. American Home Assurance Co.*, 584 F.2d 1306 (3d Cir. 1978), the Court described the *Griffith* methodology as a combination of the "approaches of both [the] Restatement II (contacts establishing significant relationships) and 'interests analysis' (qualitative appraisal of the relevant States' policies with respect to the controversy)." *Id.* at 1311. This analysis requires more than a "mere counting of contacts." *Cipolla*, 267 A.2d at 856.

Under Pennsylvania choice-of-law analysis, the Court reaches the third prong of the test when both states have an interest in the application of their law. The final prong under this inquiry asks which state has more "significant" contacts to the issue as set forth in the

Restatement (Second) of Conflicts of Laws.  *Specialty Surface Intern., Inc.*, 609 F.3d at 230.

The contacts are then weighed on a "qualitative scale according to their relation to the policies

and interests underlying the [issue at hand]." *Id.* (*quoting Shields v. Consol. Rail Corp.*, 810 F.2d

397, 400 (3d Cir. 1987).  When applying the third step in Pennsylvania's tripartite choice-of-law

analysis to an action for personal injuries, "the law of the state where the injury occurred

normally determines the rights and liabilities of the parties, unless another state, applying the

contacts test, has a more significant relationship to the occurrence and parties."  *Laconis v.

Burlington Cnty Bridge Com'n*, 583 A.2d 1218, 1223 (Pa. Super. Ct. 1990).  Contacts considered

to be "significant" are: "the place where the injury occurred; the place where the conduct causing

the injury occurred; the domicile, residence, nationality, place of incorporation, and place of

business of the parties; and the place where the relationship between the parties is centered."  *Id.*

C.1.    <u>An Actual Conflict Exists</u>:

An actual conflict exists between Pennsylvania and Delaware law on the viability of strict

liability claims.  State courts sitting in Delaware interpret the Uniform Commercial Code on

Sales of Goods (6 Del. C. § 2-101 *et seq.*) as having preempted the field, and they prohibit

extension of the theory of strict liability to the sales of goods.  *Clines v. Prowler Industries of

Maryland*, 418 A.2d 968, 978 (Del. 1980) (stating that the legislature enacted the Uniform

Commercial Code with specific provisions that extend a seller's warranties to protect consumers

from injury caused by defective goods).  Delaware's prohibition on strict liability claims

conflicts with Pennsylvania law which has no such blanket prohibition.  *See Gross*, 434 F. Supp.

at 250; *Schrecengost*, 425 F. Supp. 3d 448.  Therefore, an actual conflict in the law exists

between Pennsylvania and Delaware law on the viability of strict product liability claims.

C.2.    Governmental Interest in Application of Law:

Since an actual conflict exists on the issue of whether the Plaintiff's strict liability claims

can proceed, the Court must consider the governmental interests of each state in the application

of its own law.  *Cipolla*, 267 A.2d at 856.  Stated in the inverse, the Court considers whether "the

interest of [either states] would be adversely affected…by the application of the other state's

law."  *Specialty Surfaces Intern., Inc.*, 609 F.3d at 232.

In its Motion for Summary Judgment, the Defendant failed to define any governmental

interests at play in the application of Delaware law to this matter.  Therefore, the Court must

submit its own judgment in an attempt to ascertain a governmental interest.  For the sake of

argument, it could be said that the state legislature in Delaware had an interest in protecting

sellers and manufacturers located in the state from lawsuits based on theories of strict product

liability.  However, a review of the facts, illustrates that Delaware has no actual interest in the

outcome of this litigation.

Pennsylvania has abandoned the *lex loci delicti* conflicts analysis; therefore, the fact that

all three surgeries occurred in Delaware is of no consequence.  This action is not a medical

malpractice action and neither surgeon (Stanley Wiercinski, M.D. or  Babak Vakili, M.D.) who

operated on Plaintiff in the state of Delaware are a party to this litigation.  This action sounds in

product liability and is being brought against Johnson & Johnson which is headquartered in New

Jersey and has sold Prolift pelvic mesh all over the United States.  The testing and development

of Prolift can be clearly connected to the state of New Jersey based on Defendant's headquarters

therein.  The Defendant also provided in person instructional seminars to teach surgeons how to

properly implant pelvic mesh, and Dr. Wiercinski received instruction on how to implant Prolift

pelvic mesh at Defendant's seminars.  (Dep. of Stanley Wiercinski, M.D., Opp. Ex. 2.)  Dr. Wiercinski attended at least one of these seminars in the state of Pennsylvania.  (*Id*.)

Delaware has no actual interest in this litigation; therefore, no true conflict exists after conducting an analysis of the governmental interests.  No resident of Delaware is involved in this litigation while Pennsylvania has a clear interest in the application of its law based on the fact that its citizen suffered an injury that she alleges was caused by Defendant's Prolift pelvic mesh.

### C.3.  Pennsylvania Has the Most Significant Interest in this Litigation:

Under Pennsylvania's choice-of-law analysis, the inquiry ends once the court determines that the governmental interest clearly favor the application of Pennsylvania law over that of a foreign jurisdiction.  In this particular case, however, it is worth examining Pennsylvania's third step in the conflict-of-law analysis—the most significant relationship.[3]  To aid in evaluating and applying the most significant relationship test, Pennsylvania has adopted Restatement (Second) of Conflicts of Law §145, which reads in relevant part:

> Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include: (a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered.  These contacts are to be evaluated according to their relative importance with respect to the particular issue.

Restatement (Second) Conflict of Law § 145(2).

Applying these principles to this matter, it is possible to see that Pennsylvania has the most significant interest in this litigation.  All of the facts that were previously mentioned during the governmental interest analysis would be relevant under the most significant relationship analysis.  However, the additional factor of where the Plaintiff was injured would also play a role in determining that Pennsylvania law should apply.  As previously mentioned, Plaintiff is a long-

time resident of Pennsylvania.  In this matter, she alleges to have suffered an injury that was slow and progressive in nature.  Specifically, she alleges erosion of the Prolift pelvic mesh which caused pain and inflammation.  Due to the slow progressive nature of her alleged injury, she does not claim to have suffered harm at the time of her surgery in Delaware, but rather after the surgery when the Prolift mesh became eroded and imbedded in her body.  Her injury could conceivable have occurred in Pennsylvania over the course of time.  Dr. Wiercinski's testimony that he traveled to the state of Pennsylvania where he received training from the Defendant on how to surgically implant the Prolift pelvic mesh is also worthy of mention.  (Dep. of Stanley Wiercinski, M.D., Opp. Ex. 2 pp. 68 – 69.)

Having decided that Pennsylvania law applies to this matter, the Court must analyze each contested theory averred by Plaintiff.

D.    Count I (Negligence – Failure to Warn Claim) Survives Summary Judgment:

Various theories of negligence are alleged in Count I of the Master Complaint that was filed in the multi-district litigation including a negligent failure to warn claim.  In its motion for summary judgment, Defendant argues that Plaintiff cannot establish breach of a duty or causation.  However, Plaintiff came forward with sufficient evidence to survive summary judgment.

To establish a negligent failure to warn claim under Pennsylvania law, a plaintiff must demonstrate that the defendant breached its duty to warn, and that the breach caused her injuries. *Taurino v. Ellen*, 579 A.2d 925, 927 (Pa. Super. 1990).  In the context of claims alleging a negligent failure to warn about the risks of a medical device, the manufacturer's duty is to adequately warn the treating physician.  *Simon v. Wyeth Pharms., Inc.*, 989 A.2d 356, 368 (Pa. Super. 2009).  To establish that a failure to warn about the risks of a medical device was a

proximate cause of an injury, a plaintiff must show that had the defendant issued a proper warning to the prescribing physician, the warning would have altered the physician's behavior or treatment and the injury would have been avoided. *Demmler v. Smithkline Beecham Corp.*, 671 A.2d 1151, 1155 (Pa. Super. 1999).  The plaintiff must introduce evidence that shows some reasonable likelihood that an adequate warning would have prevented the plaintiff from undergoing the course of treatment in question. *Id.*

In response to Defendant's motion for summary judgment, Plaintiff produced the expert report of Peggy Pence, Ph.D. who opined that Defendant misbranded Prolift pelvic mesh.  Dr. Pence further opined that its labeling and instructions for use did not adequately disclose to physicians the risk associated with Prolift pelvic mesh.  (Peggy Pence, PHD, RAC, FRAPS Expert Witness Report, Opp. Ex. 34 at pp. 105-107, ECF No. 52-34.)  Daniel Elliott, M.D., also authored an expert report in which he opined that Defendant failed to warn physicians about the hazards associated with Prolift pelvic mesh.  (Expert Report of Daniel Elliott, M.D., Opp. Ex. 35 at pp. 58-59, ECF No. 52-35.)

These two expert reports read in conjunction with the deposition testimony of Plaintiff's treating surgeon, Dr. Wiercinski, suggested that summary judgment would be inappropriate.  At deposition, Dr. Wiercinski testified that he believed that he had read the Prolift instructions for use for, and he receive surgical training from Defendant.  (Dep. of Stanley Wiercinski, M.D., Opp. Ex. 2 pp. 16, 34, 37, 68.)  Dr. Wiercinski further testified that if he had been aware of certain issues associated with the use of Prolift, it probably would have affected his judgment in using the product.  (*Id.* at 70 – 71.)  Faced with this evidence, the Court declines to grant summary judgment on the negligent failure to warn claim.

13

E.      Strict Liability Failure to Warn:

In its motion for summary judgment, the Defendant argues that the evidence is insufficient to support Plaintiff's strict liability failure to warn claim in Count III of the Short Form Complaint that incorporated Count III of the Final Master Complaint.  To prevail on a strict product liability claim, a plaintiff must show that: (1) the product was in a defective condition, (2) the defect was a proximate cause of the plaintiff's injuries, and (3) the defect causing the injury existed at the time the product left the defendant's control.  *Davis v. Berwind Corp.*, 547 Pa. 260, 267 (Pa. 1997).  A product can be considered "defective" for strict liability purposes if it is distributed without warnings sufficient to notify the ultimate user of the dangers inherent in the product.  *Id.*  A defective product is a proximate cause of the plaintiff's harm where the product "was a substantial factor in bringing about the harm inflicted upon a plaintiff." *Jones v. Montefiore Hosp.*, 494 Pa. 410, 416 (Pa. 1981).

As previously mentioned, Plaintiff produced the expert reports of Peggy Pence, Ph.D. and Daniel Elliott, M.D. in Response to the Defendant's motion for summary judgment.  (Peggy Pence, PHD, RAC, FRAPS Expert Witness Report, Opp. Ex. 34; Expert Report of Daniel Elliott, M.D., Opp. Ex. 35.)  Both of these reports outlined deficiencies in the warnings provided by the Defendant.  Therefore, the Court declines to grant summary judgment as to Count III Strict Liability Failure to Warn.

F.      Strict Liability Design Defect:

In its motion for summary judgment, the Defendant argues that the evidence is insufficient to support Plaintiff's strict liability design defect claim in Count V of the Short Form Complaint that incorporated Count V of the Final Master Complaint.  To prevail on a strict products liability claim, a plaintiff must show that: (1) the product was in a defective condition,

14

(2) the defect was a proximate cause of the plaintiff's injuries, and (3) that the defect causing the injury existed at the time the product left the defendant's control. *Davis v. Berwind Corp.*, 547 Pa. 260, 267 (Pa. 1997). A plaintiff may prove defective condition by showing either that: (1) the danger is unknowable and unacceptable to the average or ordinary consumer (consumer expectations standard), or that (2) a reasonable person would conclude that the probability and seriousness of harm caused by the product outweigh the burden or costs of precautions that the defendants could take (risk-utility standard). *Tincher v. Omega Flex Inc.,* 628 Pa. 296, 335 (Pa. 2014). A defective product is a proximate cause of the plaintiff's harm if the product "was a substantial factor in bringing about the harm inflicted upon a plaintiff." *Jones v. Montefiore Hosp.,* 494 Pa. 410, 416 (Pa. 1981).

Plaintiff came forward with expert reports in support of her design defect theory. As previously discussed, Plaintiff produced experts reports from Peggy Pence, Ph.D. and Daniel Elliott, M.D. in which both experts offered opinions on the design failures in Prolift surgical mesh. Plaintiff also produced the expert report of Dr. Med. Uwe Klinge who specifically opined on the design failures in Prolift pelvic mesh. (Expert Report of Prof. Dr. Med. Uwe Klinge, Ex. 38 p. 30, ECF No. 52-30.), and the report of Dr. Pillai Allen who causally connects Plaintiff's injuries to Prolift. (Expert Report of Anita Pillai-Allen, M.D. F.A.C.O.G., Ex 8 p. 5, ECF No. 52-8.)

In the face of this evidence, the Court will not dismiss Plaintiff's strict liability design defect claim.

G.    Gross Negligence

Given the fact that this case will proceed to trial, the Court declines to dismiss the allegation of Gross Negligence at the pretrial stage of proceedings.

15

**V.     CONCLUSION:**

For the reasons stated above, this Court will grant in part and deny in part the motion for

summary judgment filed by the Defendant.  An appropriate order will be entered.

By the Court:

    /s/ John Milton Younge    
Judge John Milton Younge

---

[1]  This motion for summary judgment was originally filed by Ethicon, Inc. and Johnson & Johnson; however, Ethicon, Inc. was dismissed from the case by joint stipulation.  (ECF No. 65.)

[2]  *In re Yasmin and Yaz (Drospirenone) Mktg., Sales Practice & Prod. Liab. Litig.*, 2011 WL 1375011, 85 (S.D. I 11. Apr. 12, 2011) (holding that cases that originate outside of the court's judicial district and that were filed directly into the MDL would be treated as if they were transferred from a judicial district sitting in the state where the case originated).  In the context of an MDL, courts routinely apply the choice-of-law rules of the court from which the case was transferred.  *See In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine)*, No. MDL 1203, Civ.A. 03-20284, 2004 WL 1925010 at *1 (E.D. Pa. Aug. 30, 2004) ("As the MDL transferee court in this matter, we must apply the choice-of-law rules of Florida, the state where the transferor court sits."); *In re American Invest Life Ins. Co. Annuity Marketing and Sales Practices Litigation*, 2007 WL 2541216 *36 n.16 (E.D. Pa. Aug. 29, 2007) ("Although neither the Supreme Court nor the United States Court of Appeals for the Third Circuit has explicitly ruled on the issue, it appears that in MDL proceedings the transferee court applies the choice-of-law rules that would govern in the transferor forum.").

[3]  The Defendant argues Delaware law should apply in this matter because this action was directly filed within the multi-district litigation.  The Defendant points to a series of cases that

were brought in the context of pharmaceutical litigation.  They argue that the law of the place where the pharmaceutical was proscribed and ingested should control.  *In re Avandia Marketing, Sales Practices and Product Liability Litigation*, 2012 WL 3205620 *2 (E.D. Pa. Aug 7, 2012) ("The Court must determine whether to apply Pennsylvania law or the law of Plaintiffs' home states. The Court has concluded, as have other MDL courts, that such cases should be governed by the law of the states where Plaintiffs received treatment and prescriptions for Avandia").

The major problem with the Defendant's argument is that this action is not being tried within the multi-district litigation.  It has been transferred to the Eastern District of Pennsylvania for trial.  Furthermore, if this Court were to apply Delaware law, then Delaware choice-of-law analysis would apply.  Under Delaware's choice of law analysis, this Court would reach the same result and find that Pennsylvania law applies to the facts presented in this action.

Delaware has adopted the "most significant relationship" test of Restatement (Second) Conflict of Law § 145.  *Travelers Indem. Co. v. Lake*, 594 A.2d 38, 47 (Del. 1991) (adopting for Delaware the "most significant relationship" test set forth in § 145 of the Restatement (Second) of Conflict of Law).  The court first determines if there is an actual – rather than no conflict or merely a "false" – conflict.  *Deuley v. DynCorp International Inc.*, 8 A.3d 1156, 1161 (Del. 2010).  If there is no actual conflict, "the Court should avoid the choice-of-law analysis altogether," but if a true conflict exists, the Court then applies the "most significant relationship" test as outlined in the Restatement (Second) of Conflict of Law.  *Id.*; *see also Laugelle v. Bell Helicopter Textron, Inc.*, 2013 WL 5460164 (Oct. 1, 2013) (for a discussion on Delaware's choice-of-law analysis).